IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MICHAEL WADE CARTER, | § | |
| [former] TDCJ-CID NO. 710262, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-0117 |
| | § | |
| RISSIE L. OWENS, et al., | § | |
| | § | |
| Defendants. | § | |

### **MEMORANDUM OPINION AND ORDER**

Michael Wade Carter, a former parolee, filed this civil rights action while he was incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID).[1] He sues Rissie Owens, Chairperson of the Texas Board of Pardons and Paroles (BPP); Brian Collier, Director of the BPP Parole Division; Ursula Mattox, a BPP parole officer; and Brady Bars, a sex therapist. Carter has filed an Application to Proceed In Forma Pauperis. The court will **GRANT** the Application (Docket Entry No. 2) and **DISMISS** this action because it is frivolous.

### **I. Claims and Allegations**

Carter contends that Owens, Collier, Mattox, and Bar illegally classified him as a sex offender and forced him to undergo evaluation as a sex offender while he was on parole. He claims that he was convicted of unauthorized use of a motor vehicle in 1994. Carter had also been charged with indecency with a child in 1992, and apparently the case went to trial in 1993; however, he was

---

[1] Carter is presently incarcerated in the Washington County Jail.

never convicted for that offense.  *See* Complaint, Docket Entry No. 1, at 3; Attachment B, Docket Entry No. 1-3.

Carter was released from TDCJ-CID under mandatory supervision on December 22, 2000. Although he was not convicted of indecency with a child, he had to submit to a sex offender evaluation and also pay $ 68 to cover the cost of the evaluation. Carter asserts that the outcome of the evaluation was that he did not need any therapy for a crime he did not commit; however, Mattox requested the BPP evaluate Carter again.  Bars conducted this second evaluation in August of 2003. Carter states that the evaluation consisted of pointed questions and that his answers were consistent with those given at his 1993 trial in which he was not found guilty.  Bars refused to accept the fact that Carter's answers tended to exonerate him, and instead twisted the responses to fit his conclusion that Carter was a sex offender.  Bars then submitted the misleading information to the BPP in order to remove Carter from the regular case list and place him in the sex offender case load.  As a result, Carter was subjected to additional restrictions with regard to his living arrangements and employment.  He also had to fulfil additional duties including mandatory sex offender classes. Finally, Carter had to pay $ 100 for the second evaluation which he contends was not necessary.

Carter contends that he became depressed and required medication as a result of the stress from being treated as a sex offender.  He contends that his placement on the BPP's sex offender caseload after being found not guilty of indecency with a child violates his Fifth Amendment right not to be subjected to double jeopardy.  He seeks a declaratory judgment and an injunction prohibiting the BPP from continuing to treat him as a sex offender.  He also seeks compensation for the $ 168 he has paid for the evaluations.

## II. <u>Analysis</u>

Carter is misguided in his interpretation of the conditions of his release under Mandatory Supervision as some form of punishment. Mandatory supervision is a form of parole release automatically granted to eligible prisoners after they have served a portion of their sentence and have earned credit for good behavior. *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir.2000). *See also* TEX. GOVT CODE § 508.221 (2004). Like regular parolees, prisoners who have been released under mandatory supervision must abide by terms dictated by the Parole Board, including the use of electronic monitoring. *Id.* This is because the State has an "overwhelming" interest in monitoring felons who have been released before the expiration of their sentences. *See Morrisey v. Brewer*, 92 S.Ct. 2593, 2600-01 (1972). Although Carter was subject to limitations on how he conducted his affairs, he still had the liberty to engage in many activities which are not available to him while he served his sentence in prison. *Id.*

In general, a prisoner found guilty of committing an offense under Texas criminal law may be required to serve his entire sentence and has no right to be released before the sentence expiration date. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 99 S.Ct. 2100 (1979). When the BPP, in its discretion, releases a prisoner on parole, he remains under the Board's supervision and control until the expiration of his sentence. *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). With regard to Carter's parole, the BPP has always had the authority to impose and modify restrictions on parolees. *See Randall v. Cockrell*, No. 3-02-CV-0648-G, 2002 WL 31156704 (N.D. Tex. Sept. 25, 2002), *citing*, TEX. CODE CRIM. PRO. art. 42.12 § 15(g) (Vernon 1983) (since repealed); TEX. CODE CRIM. PRO. art. 42.18 § 8(g) (since repealed). *See also* TEX. GOVT. CODE §

508.044(b) (West 2002) (the Board shall determine the conditions of parole and the modification and withdrawal of those conditions).

Although Carter found the additional conditions degrading and restrictive they cannot be considered a violation of the Double Jeopardy Clause. "The Double Jeopardy Clause of the United States Constitution prohibits a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and . . . successive punishments for the same offense." *North Carolina v. Pearce*, 89 S.Ct. 2072, 2076 (1969); *Doyle v. Johnson*, 235 F.3d 956, 958 (5th Cir. 2000). As stated above, the restrictions placed upon Carter after his release under mandatory supervision were made in pursuit of the BPP's duty to monitor Carter's behavior and movements. *See Morrisey*, 92 S.Ct. 2600-01. Such conditions are not punishments in violation of the Double Jeopardy Clause. *See United States v. Love*, 431 F.3d 477 (5th Cir. 2005) (parolee ordered to pay child support). Moreover, the liberty interests of a parolee are restricted, and he may be returned to prison without being afforded a full criminal trial with all of the protections made available to a criminal defendant who has not yet been convicted. *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996), *citing Morrissey*. Therefore Carter's return to prison for violating BPP's imposed conditions would not constitute a double jeopardy violation. *See United States v. Wyatt*, 102 F.3d 241, 245 (7th Cir. 1996) ("revocation of supervised release amounts only to a modification of the terms of the defendant's original sentence"); *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998) ("Double Jeopardy Clause does not apply to parole and probation revocation proceedings").

While Carter may find that it is unreasonable to be charged for sex offender evaluations which he thinks were unnecessary, he fails to present any argument showing that his constitutional rights were violated by having to pay for the evaluations. The state and municipal governments have

limited resources and they may charge prisoners, probationers, and parolees for necessary services even if they do not actually desire them. *See Myers v. Klevenhagen*, 97 F.3d 91 (5th Cir. 1996) (prisoners charged for medical services). Parolees are often required to pay for services regardless of whether they believe they are necessary or fair. *See Love*, 432 F.3d at 483. Consequently, there is no legal support for Carter's arguments regarding the conditions of his release under mandatory supervision. A complaint is frivolous if it lacks an arguable basis in law or fact. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). This complaint has no merit and, therefore, will be **DISMISSED** as frivolous.

Carter's Application to Proceed In Forma Pauperis (Docket Entry No. 2) will be **GRANTED**. He is obligated to pay the filing fee ($ 250) because he was incarcerated when he filed his complaint. *Hatchet v. Nettles*, 201 F.3d 651 (5th Cir. 2000). Although Carter is not incarcerated in the TDCJ-CID at this time, if and when he returns to the state prison system the TDCJ-CID Inmate Trust Fund shall deduct 20 percent of each deposit made to Carter's account and forward the funds to the Clerk of this court on a regular basis, in compliance with the provisions of 28 U.S.C. § 1915(b)(2), until the entire fee has been paid.

Carter filed a motion for appointment of counsel (Docket Entry No. 7) contending that his incarceration and lack of funds make such an appointment necessary. In general, there is no right to a court appointed attorney in § 1983 cases. *Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). The court will **DENY** the motion because the allegations and issues in the complaint do not remotely present any viable claim and the presence of counsel would not alter the outcome of this proceeding. *See Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998).

### III. Conclusion

The court **ORDERS** the following:

1. The Application to Proceed In Forma Pauperis (Docket Entry No. 2) is **GRANTED**.

2. The TDCJ-CID Inmate Trust Fund shall collect the filing fee ($ 250.00) and forward it to the Clerk consistent with the provisions of this Memorandum Opinion and Order.

3. The Motion for Leave to File Amended Complaint (Docket Entry No. 6) is **GRANTED**.

4. The Motion to Appoint Counsel (Docket Entry No. 7) is **DENIED**.

5. This prisoner civil rights action, filed by Former TDCJ-CID Inmate Michael Wade Carter # 710262, is **DISMISSED** as frivolous. 28 U.S.C. § 1915(e).

6. The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the TDCJ-CID Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax Number Fax Number (936) 437-4793; and Betty Parker, United States District Court, Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702.

**SIGNED** on this 20th day of September, 2006.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE